Hale v. Hale.

## HALE v. HALE.

### (*Knoxville.*    October   6,   1897.)

1. ADMINISTRATION.    *Annuities are not assets, when.*

Annuities provided for in deeds to the grantor's children, re-
quiring the payment to him during life of the interest on a
specified amount, do not become a debt owing to the grantor,
so as to be recoverable from the children, and become assets of
his estate for collation and distribution after his death, twelve
years subsequent to the execution of the deeds, where he never
requested payment of such annuities, except for the first year
or two, and thereafter refused to accept the same when offered,
and, in his will, executed eight years after the execution of the
deeds, he bequeathed to his children all that he had previously
given them, and all that he had charged against them by note
or otherwise at his death, to be held against them on final set-
tlement after his death, and stated therein that the requirement
that the children pay such interest was only for his support if
he should need it, and that it was released in full unless some-
thing subsequently happened rendering its payment necessary
for his support.    (*Post, pp. 533–536.*)

2. COURT OF CHANCERY APPEALS.    *Conclusions of, sustained, when.*

The conclusions reached and declared by the Court of Chancery
Appeals will be sustained unless they can be shown to be erro-
neous upon the facts that appear in their report.    If a party
desires this Court to look to any fact, he must see that it is em-
bodied in the findings of the Court of Chancery Appeals.    (*Post,
p. 537.*)

---

FROM   HAMBLEN.

---

Appeal from Chancery Court of Hamblen County.
JOHN P. SMITH, Ch.

INGERSOLL & PEYTON and J. O. PHILLIPS for Mrs. Hale.

J. G. ROSE for Hale.

WILKES, J.    This bill was filed by the widow of James Hale, deceased, against the eight children of her deceased husband by a former marriage, one of whom qualified as his administrator, for a settlement of the accounts of the administrator and a payment to her of the amount to which she is entitled as her distributive share upon her dissent from her husband's will.    Many of the questions originally involved have been eliminated by the decree of the Chancellor, and on appeal by the Court of Chancery Appeals, and there remain only two questions now presented by the widow on her appeal and assignment of errors from the Court of Chancery Appeals.

These questions are whether certain annuities charged upon the land given to his eight children, to continue during the testator's life, should be collated at his death for the benefit of the widow, and treated as a part of the testator's estate, in order to arrive at the distributive share of the widow; and second, whether certain notes and debts held by the testator at the time of his death against his children should likewise be treated as a part of his estate in order to give the widow a distributive share in the same.

It appears from the findings of the Court of

Chancery Appeals that the testator made deeds to his children, in 1877, of certain lands. These deeds all contain this clause: "By the said [naming the child] paying to the said James Hale, his father, the interest on $500 as long as the said James Hale may live."

The will contains the following clauses: "I will and bequeath [naming the child] all that I have heretofore given to him, and all that I have charged against him by note or otherwise, at my death, is to be held against him on a final settlement after my death."

And, also: "I further will and request that my executors shall sell all of my remaining property of every description to the highest bidder, on twelve months' time, for cash, and, when collected, shall divide it equally between the heirs of my six sons and two daughters, if they are living, for their use and during their lives, and, if not, to their heirs, taking into consideration what is charged against them at my death, by note or account, in the land that I gave them, and required them to pay the interest on $500, was only for my support if I should need it, that is released in full unless that something should hereafter happen that I should need it for my support, and, if not, there is no further claim against them for interest." This will was written by the testator himself on March 20, 1885, and he died in December, 1887, about twelve years after the deed was made.

The Court of Chancery Appeals find that, after
the first year or two from the execution of the
deeds, he never demanded or requested the children
to pay him any interest on account of these provis-
ions in the deeds, but that, according to the testi-
mony of one, or perhaps more, of the children, he
refused to accept it when offered to him by them.
The Court of Chancery Appeals conclude, from the
terms of the will, that the testator intended to re-
lease all claim he might have against any of them
for such interest or annuity, and that his neglect
to call for it, or even to accept it when offered,
was a release of such claim before his death, and
even before he made his will.  They find, therefore,
that the annuities were released not only by the will,
but by the conduct of the testator previous to mak-
ing his will, in failing to demand them and declin-
ing to receive them, and hence they are not to be
considered as part of his estate, to be marshaled in
order to fix the share of the dissenting widow.

We are of opinion the Court of Chancery Appeals
has reached the correct result as to this feature.
We need not consider the abstract question whether
a testator can release a debt owing to his estate by
will, so as to prevent its being considered as part
of his estate, and so treated by his dissenting widow
in fixing her rights and determining her share.  That
presents an interesting and difficult question.  We do
not think that is the question here involved, because
we do not consider these annuities or claims as debts

owing to the estate at the time the testator died, under the deeds and will and by the conduct of the father. The yearly reservation of interest upon $500 was intended solely for the benefit of the father, if he needed it, during his life, and was clearly dependent upon his calling for it; and until and unless he did call for it in his lifetime, it did not become a debt against the child. Under the facts as found by the Court of Chancery Appeals, it was not a matter of releasing an existing debt, but a failure of the testator to give vitality to the claim, and make it a debt during his life, which he reserved the option to do.

The will is not in technical language, and the matter is referred to as a release, but it is, under the deeds and will and the conduct of the father, a failure to become a debt. It is true one clause of the will says: "All that I have charged against him by note or otherwise [referring to each child], at my death is to be held against him on final settlement after my death." But this yearly interest had never been charged against the children, or any of them, but was left in such condition that he might charge it, if he saw proper, at any time during life, or he might refuse to charge it, and if the latter, then it never became a debt. The other clause of the will clearly indicated that he did not intend to make these interest claims debts to him from his children, unless he should need them for his support during his life, and, if he did not claim them him-

Hale *v.* Hale.

self, nothing further should be claimed on account of them thereafter or by anyone else. He alone could give existence and vitality to the matter as a debt.

As to the second error assigned, it is not insisted that the debts which it is sought to charge up against the children and the administrator were not of age sufficient to raise the bar of the statute, and it is not alleged there had been any new promise, but the contention is rested upon the ground that the administrator did not demand payment of the debts and bring suit upon them and put the makers to the test whether they would or not plead the statute. How this is we are not informed by the finding of the Court of Chancery Appeals, and we cannot look behind their finding for facts upon which to reverse their holding. If other facts were desired they should have been called for. The Chancellor found that the debts were barred, and so decreed. The Court of Chancery Appeals affirmed his decree, and, in the absence of facts found by the Court of Chancery Appeals impeaching either decree, we cannot presume they were not supported by proper and sufficient evidence.

Affirm the decree of the Court of Chancery Appeals.